Marc C. Forsythe - State Bar No. 153854
Donald W. Reid - State Bar No. 281742
**GOE & FORSYTHE, LLP**
18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
mforsythe@goeforlaw.com
cmiller@goeforlaw.com
Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Attorneys for 779 Stradella, LLC
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

|  |  |
|---|---|
| In re:<br><br>779 STRADELLA, LLC, a Delaware limited liability company,<br><br>    Debtor and Debtor in Possession. | Case No. 8:16-bk-15156 CB<br><br>Chapter 11 Case<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER ESTABLISHING SALE PROCEDURES FOR REAL PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JEFFREY YOHAI IN SUPPORT THEREOF**<br><br>**HEARING ON THIS MOTION:**<br><br>Date:          November 22, 2017<br>Time:         10:00 a.m.<br>Ctrm:         5D<br><br>**SALE HEARING AND AUCTION DATE:**<br><br>Date:          December 13, 2017<br>Time:         11:00 a.m.<br>Ctrm:         5D |

1     **PLEASE TAKE NOTICE** that pursuant to Local Bankruptcy Rule 6004-1 a hearing will

2 be held on **November 22, 2017 at 10:00 a.m. in Courtroom 5D** of the United State Bankruptcy

3 Court located at 411 West Fourth Street, Santa Ana, CA 92701 to consider *Motion for Order*

4 *Establishing Sale Procedures for Stradella Property* (the "Sale Procedures Motion") filed by 779

5 Stradella, LLC ("Debtor").  In the Sale Procedures Motion, Debtor seeks entry of an order

6 establishing the procedures for the sale of the real property located at 1037 Stradella, Los Angeles,

7 CA 90077 (the "Property").  This Sale Procedures Motion is supported by the Declaration of

8 Jeffrey Yohai ("Yohai Declaration").

9     The Property is encumbered with (i) an undisputed first priority deed of trust held by

10 Genesis Capital Master Fund II, LLC ("Genesis") that secures a debt of approximately $7,800,000

11 as of October 1, 2017, which amount will be greater by the time of the scheduled December 13,

12 2017 auction (the "Genesis Lien"), (ii) a disputed second priority deed of trust held by Paul

13 Manafort ("Manafort") that secures an alleged debt of approximately $2,700,000 (which lien

14 might be voluntarily released prior to or on the date of the December 13, 2017 auction), (iii)

15 property tax liens held by the Los Angeles County Tax Collector ("LA County") that secures tax

16 obligations of approximately $104,000, which amount will be greater by the time of the scheduled

17 December 13, 2017 auction (the "Tax Liens"), and (iv) a lien in favor of Vantage Design Group,

18 Inc. in the amount of $63,352.43.    The Manafort Lien is disputed as a preferential transfer.

19 Debtor intends to sell the Property for the benefit of the bankruptcy estate and its creditors.

20     Debtor intends to sell the Property pursuant to an auction held before the Court on

21 December 13, 2017 at 11:00 a.m. (the "Auction").  Debtor has not yet accepted a stalking horse

22 bid but hopes to do so prior to the Auction.  Debtor will file a separate motion for approval of the

23 sale at the Auction.  By this Sale Procedures Motion, Debtor seeks approval of the proposed sale

24 procedures, which are attached as **Exhibit "1"** to the Yohai Declaration.

25     The table below summarizes the Sale Procedures, which are further discussed in the Sale

26 Procedures Motion.  The terms of the Purchase Agreement and the Bidding Procedures control in

27 the event of any inconsistency with this summary.

28

| | |
|---|---|
| Minimum Opening Bid | $8,200,000.00 (subject to reduction if a secured lienholder credit bids its lien). |
| Subsequent Overbids | $25,000.00 |
| Representations/Warranties | The Property shall be sold on an "as is, where is" basis and without representations or warranties of any kind, nature or description. |
| Treatment of Liens | The Property shall be sold, subject to approval by court order after the Auction, free and clear of all liens, claims, adverse claims of ownership pursuant to 11 U.S.C. § 363(f), with the existing liens to be treated as follows: <br><br>1.    The Genesis Lien shall be paid in full through escrow. <br><br>2.    The Manafort Lien shall not attach to the sale proceeds due to a bona fide dispute as to the lien, pursuant to 11 U.S.C. Section 363(f)(4). <br><br>3.    The Vantage Design lien shall be paid in full through escrow. <br><br>4.    The Tax Liens shall be paid in full through escrow <br><br>5.    All other liens, claims, and adverse claims of ownership, if any, shall attach to the net proceeds of the sale to the same extent, validity, and priority as they attached to the Property. |
| Qualification of Bidders | Only "Qualified Bidders" will be allowed to bid for the Property during the Auction. <br><br>To qualify for bidding during the Auction, a bidder must: <br><br>1.    Provide, prior to or simultaneous with the submission of a bid, evidence reasonably acceptable to Debtor of the Qualified Bidder's ability to fully and timely perform if its bid were to be accepted by Debtor and approved by the Bankruptcy Court. <br><br>2.    Provide evidence, to Debtor's reasonable satisfaction, of the Potential Bidder's financial wherewithal and capability to fully and timely close the sale. <br><br>3.    Submit a competing bid in conformity with the provisions of the Sale Procedures under which Debtor would receive cash consideration at closing in an amount not less than the Minimum Opening Bid. <br><br>4.    Deliver a good faith cash or cash equivalent deposit in the amount of $100,000.00 ("Deposit"). <br><br>5.    Disclose all of its prepetition and postpetition relationships with Debtor, other bidders, major creditors or equity security holders of the Debtor or any of its Affiliates. |

| | Form of Bids | In addition, a Qualified Bidder shall: |
|---|---|---|

In addition, a Qualified Bidder shall:

1.    Deliver a written copy of its bid to Debtor by not later than 5:00 p.m. (PST) three (3) business days prior to the Auction ("Bid Deadline").  Debtor may extend the Bid Deadline once or successively but is not obligated to do so.  If Debtor extends the Bid Deadline, it shall promptly notify all potential bidders of the extension.

2.    Make its bid irrevocable and in an amount not less than the Minimum Bid Amount.

3.    Make its bid upon the terms and conditions set forth in the *Agreement for Purchase and Sale of Property and Escrow Instructions* ("Purchase Agreement"), which is attached to the Sale Procedures as Exhibit A, subject to such modification as the Qualified Bidder proposes, which shall be presented in a document marked to show changes from the Purchase Agreement and in conformity with items (a) through (f) below ("Marked Agreement").  The proposed modifications shall:

(a)   not be conditioned upon obtaining financing or any internal approval, or upon the outcome or review of due diligence (the bid may, however, be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Purchase Agreement);

(b)   be irrevocable through the conclusion of the Auction;

(c)   not request or entitle the bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment;

(d)   provide for the closing of the sale by the time specified for the "Closing" under the Purchase Agreement;

(e)   acknowledge and represent that the bidder (i) has had an opportunity to inspect and examine the Property and the transaction structure set forth in the Purchase Agreement, (ii) in making its bid, has relied solely on its own independent review, investigation and/or inspection of same, and (iii) has not relied on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied or by operation of law or otherwise regarding same, or the completeness of any information provided in connection therewith at the Auction, except as expressly stated in the Marked Agreement or these Bid Procedures; and

(f)   fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bidding, and all terms of any such participation that, in the

| | |
|---|---|
| | reasonable business judgment of Debtor, are relevant to such bid. |
| Auction Procedures | The Auction shall be conducted pursuant to the following terms:<br><br>1. At least one (1) business day before the Auction, Debtor shall notify all Qualified Bidders of the Qualified Bid that, as determined in Debtor's sole discretion, is the highest or otherwise best Qualified Bid ("Baseline Bid").<br><br>2. The Auction shall commence at 11:00 a.m. on December 13, 2017 in Courtroom 5D in the Ronald Reagan Federal Building and Courthouse, 411 West Fourth Street, Santa Ana, CA 92701-4593.<br><br>3. All Qualified Bidders must be present at the Auction in person or through a qualified representation, and only Qualified Bidders who have submitted Qualified Bids will be eligible to participate in the Auction.  Unless specified by Debtor, no Qualified Bidder will be permitted more than ten (10) minutes to respond to the previous bid.<br><br>4. Debtor will review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the transaction process and the best interests of the bankruptcy estate, including those factors asserting the speed and certainty of consummating the transaction.  Immediately prior to the conclusion of the Auction, Debtor shall (i) identify the highest or otherwise best offer to purchase the Property ("Successful Bid"), (ii) identify the next highest or otherwise best offer after the Successful Bid ("Next Highest Bid"), and (iii) notify all Qualified Bidders present at the Auction the identities of the bidder that submitted the Successful Bid ("Successful Bidder") and of the bidder that submitted the Next Highest Bid ("Next Highest Bidder").<br><br>5. Debtor and Successful Bidder shall close the sale within fifteen (15) calendar days after entry of a court order approving the Sale and not subject to any stay ("Approval Order").  If the Successful Bidder fails to close the sale, Debtor is authorized (but not required) to close the sale with the Next Highest Bidder.  If Debtor decides to close with the Next Highest Bidder, then Debtor and Next Highest Bidder shall have an additional fifteen (15) calendar days to close.<br><br>6. The Deposits of all Qualified Bidders will be held by Debtor's counsel in one or more non-interest bearing accounts.  Deposits made by Qualified Bidders, other than those made by the Successful Bidder and Next Highest Bidder who agrees to maintain its status as a back-up bidder, shall be returned to such Qualified Bidders within fifteen (15) business days following the conclusion of the Auction. |

**PLEASE TAKE FURTHER NOTICE** that following court approval of the Sale Procedures Motion, Debtor shall: (1) provide potential Qualified Bidders with (a) a copy of the Purchase Agreement, and (b) no less than 14 days' notice of the Bid Procedures, and the date and time where the Auction will take place; and (2) file a separate notice of motion and motion to approve the sale of the Property at the Auction ("Sale Motion") (which will be filed on or before November 22, 2017 for the December 13, 2017 hearing), and provide not less than twenty-one (21) days' notice of the hearing on the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 6004-1(b)(4) requires that (1) any opposition to the Sale Procedures Motion and accompanying memorandum of points and authorities and declarations must be filed and served at least one (1) day before the hearing on the Sale Procedures Motion, unless otherwise ordered by the Court, and (2) papers filed in opposition to the Sale Procedures Motion must be served by personal delivery, messenger, fax, or email on (a) Debtor's counsel, whose contact information appears on the first page of this Sale Procedures Motion, and (b) the Office of the United States Trustee, and (3) a Judge's copy of the opposition papers must be served on the Honorable Scott C. Clarkson in chambers pursuant to Local Bankruptcy Rule 5005-2(d).  Pursuant to Local Bankruptcy Rules 6004-1 and 9013-1(h), failure to timely file an opposition to the Sale Procedures Motion may be deemed to constitute consent to the granting of the Sale Procedures Motion.

DATED:  November 15, 2017                    Respectfully submitted by:

                                               **GOE & FORSYTHE, LLP**

                                               By: _/s/Marc C. Forsythe_____
                                                     Marc C. Forsythe, Counsel to 779 Stradella,
                                                     LLC, Debtor and Debtor in Possession

### MEMORANDUM OF POINTS & AUTHORITIES

## I.    STATEMENT OF FACTS

On December 21, 2016, Debtor voluntarily filed this chapter 11 bankruptcy case.  Debtor is operating as a debtor in possession pursuant to 11 U.S.C. § 1107.

Debtor's primary asset is the Property, which is a single family residence, five bedrooms, 5 baths, 3,746 square feet, located in an upscale community of Los Angeles.

The Property is encumbered with (i) an undisputed first priority deed of trust held by Genesis Capital Master Fund II, LLC ("Genesis") that secures a debt of approximately $7,700,000 as of October 1, 2017, which amount will be greater by the time of the scheduled December 13, 2017 auction (the "Genesis Lien"), (ii) a disputed second priority deed of trust held by Paul Manafort ("Manafort") that secures an alleged debt of approximately $2,700,000 (which lien might be voluntarily released prior to or on the date of the December 13, 2017 auction), (iii) property tax liens held by the Los Angeles County Tax Collector ("LA County") that secures tax obligations of approximately $104,000, which amount will be greater by the time of the scheduled December 13, 2017 auction (the "Tax Liens"), and (iv) a lien in favor of Vantage Design Group, Inc. in the amount of $63,352.43.  The Manafort Lien is disputed as a preferential transfer. Debtor intends to sell the Property for the benefit of the bankruptcy estate and its creditors.

Debtor intends to sell the Property pursuant to an auction held before the Court on December 13, 2017 at 11:00 a.m. (the "Auction").  Debtor has not yet accepted a stalking horse bid but hopes to do so prior to the Auction.  Debtor will file a separate motion for approval of the sale at the Auction.  By this Sale Procedures Motion, Debtor seeks approval of the proposed sale procedures, which are attached to the Yohai Declaration as **Exhibit "1"**.

Debtor intends to sell the Property for the benefit of the bankruptcy estate and creditors. Debtor believes the Property has a fair market value of approximately $8 million and expects the bankruptcy estate to receive a meaningful distribution from the Sale.

The table below summarizes the Sale Procedures, which are further discussed in this Sale Procedures Motion.  The terms of the Purchase Agreement and the Bidding Procedures control in the event of any inconsistency with this summary.

## II.    The Proposed Bid Procedures

As discussed in the preceding Notice of Motion, at this point the Debtor is seeking the approval of the Bid Procedures, which are summarized in the following table.  The terms of the Purchase Agreement and the Bidding Procedures control in the event of any inconsistency with this summary.

| | |
|---|---|
| Minimum Opening Bid | $1,900,000.00 (subject to reduction if a secured lienholder credit bids its lien). |
| Subsequent Overbids | $25,000.00 |
| Representations/Warranties | The Property shall be sold on an "as is, where is" basis and without representations or warranties of any kind, nature or description. |
| Treatment of Liens | The Property shall be sold, subject to approval by court order after the Auction, free and clear of all liens, claims, adverse claims of ownership pursuant to 11 U.S.C. § 363(f), with the existing liens to be treated as follows:<br>1.    The Genesis Lien shall be paid in full through escrow.<br>2.    The Bowery Lien shall be paid in full through escrow.<br>3.    The Manafort Lien shall not attach to the sale proceeds due to a bona fide dispute as to the lien, pursuant to 11 U.S.C. Section 363(f)(4).<br>4.    The Tax Liens shall be paid in full through escrow<br>5.    All other liens, claims, and adverse claims of ownership, if any, shall attach to the net proceeds of the sale to the same extent, validity, and priority as they attached to the Property. |

/ / /

/ / /

| | | |
|---|---|---|
| | Qualification of Bidders | Only "Qualified Bidders" will be allowed to bid for the Property during the Auction.<br><br>To qualify for bidding during the Auction, a bidder must:<br>1.    Provide, prior to or simultaneous with the submission of a bid, evidence reasonably acceptable to Debtor of the Qualified Bidder's ability to fully and timely perform if its bid were to be accepted by Debtor and approved by the Bankruptcy Court.<br>2.    Provide evidence, to Debtor's reasonable satisfaction, of the Potential Bidder's financial wherewithal and capability to fully and timely close the sale.<br>3.    Submit a competing bid in conformity with the provisions of the Sale Procedures under which Debtor would receive cash consideration at closing in an amount not less than the Minimum Opening Bid.<br>4.    Deliver a good faith cash or cash equivalent deposit in the amount of $100,000.00 ("Deposit").<br>5.    Disclose all of its prepetition and postpetition relationships with Debtor, other bidders, major creditors or equity security holders of the Debtor or any of its Affiliates. |
| | Form of Bids | In addition, a Qualified Bidder shall:<br><br>1.    Deliver a written copy of its bid to Debtor by not later than 5:00 p.m. (PST) three (3) business days prior to the Auction ("Bid Deadline").  Debtor may extend the Bid Deadline once or successively but is not obligated to do so.  If Debtor extends the Bid Deadline, it shall promptly notify all potential bidders of the extension.<br><br>2.    Make its bid irrevocable and in an amount not less than the Minimum Bid Amount.<br><br>3.    Make its bid upon the terms and conditions set forth in the *Agreement for Purchase and Sale of Property and Escrow Instructions* ("Purchase Agreement"), which is attached to the Sale Procedures as Exhibit A, subject to such modification as the Qualified Bidder proposes, which shall be presented in a document marked to show changes from the Purchase Agreement and in conformity with items (a) through (f) below ("Marked Agreement").  The proposed modifications shall:<br><br>    (a)   not be conditioned upon obtaining financing or any internal approval, or upon the outcome or review of due diligence (the bid may, however, be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Purchase |

| | |
|---|---|
| | Agreement); |
| | (b) be irrevocable through the conclusion of the Auction; |
| | (c) not request or entitle the bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment; |
| | (d) provide for the closing of the sale by the time specified for the "Closing" under the Purchase Agreement; |
| | (e) acknowledge and represent that the bidder (i) has had an opportunity to inspect and examine the Property and the transaction structure set forth in the Purchase Agreement, (ii) in making its bid, has relied solely on its own independent review, investigation and/or inspection of same, and (iii) has not relied on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied or by operation of law or otherwise regarding same, or the completeness of any information provided in connection therewith at the Auction, except as expressly stated in the Marked Agreement or these Bid Procedures; and |
| | (f) fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bidding, and all terms of any such participation that, in the reasonable business judgment of Debtor, are relevant to such bid. |
| Auction Procedures | The Auction shall be conducted pursuant to the following terms: |
| | 1.  At least one (1) business day before the Auction, Debtor shall notify all Qualified Bidders of the Qualified Bid that, as determined in Debtor's sole discretion, is the highest or otherwise best Qualified Bid ("Baseline Bid"). |
| | 2.  The Auction shall commence at 11:00 a.m. on December 13, 2017 in Courtroom 5D in the Ronald Reagan Federal Building and Courthouse, 411 West Fourth Street, Santa Ana, CA 92701-4593. |
| | 3.  All Qualified Bidders must be present at the Auction in person or through a qualified representation, and only Qualified Bidders who have submitted Qualified Bids will be eligible to participate in the Auction.  Unless specified by Debtor, no Qualified Bidder will be permitted more than ten (10) minutes to respond to the previous bid. |
| | 4.  Debtor will review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the transaction process and the best interests of the bankruptcy estate, including those factors asserting the speed and certainty of consummating the transaction.  Immediately prior to the conclusion of the Auction, Debtor shall (i) identify the highest or otherwise best offer to purchase the Property ("Successful Bid"), (ii) identify the next highest or otherwise best offer after the Successful Bid ("Next Highest Bid"), and (iii) notify all Qualified |

|  | Bidders present at the Auction the identities of the bidder that submitted the Successful Bid ("Successful Bidder") and of the bidder that submitted the Next Highest Bid ("Next Highest Bidder").<br><br>5.      Debtor and Successful Bidder shall close the sale within fifteen (15) calendar days after entry of a court order approving the Sale and not subject to any stay ("Approval Order").  If the Successful Bidder fails to close the sale, Debtor is authorized (but not required) to close the sale with the Next Highest Bidder.  If Debtor decides to close with the Next Highest Bidder, then Debtor and Next Highest Bidder shall have an additional fifteen (15) calendar days to close.<br><br>6.      The Deposits of all Qualified Bidders will be held by Debtor's counsel in one or more non-interest bearing accounts. Deposits made by Qualified Bidders, other than those made by the Successful Bidder and Next Highest Bidder who agrees to maintain its status as a back-up bidder, shall be returned to such Qualified Bidders within fifteen (15) business days following the conclusion of the Auction. |
|---|---|

Debtor believes that the Bid Procedures are reasonable and appropriate, and should obtain the maximum value for the Property to the benefit of the estate.

## III.  **ARGUMENT**

Section 363(b) of the Bankruptcy Code provides that after a notice and a hearing, the trustee may sell property of the estate outside the debtor's ordinary course of business. 11 U.S.C. § 363(b).  Bankruptcy Rules 2002 and 6004 prescribe the required extent and timing of notice of a trustee's proposed sale of assets.  Specifically, the clerk, or some other person as the court may direct, must give the debtor, the trustee, and all creditors at least 21 days' notice by mail of a proposed sale of property of the estate outside the ordinary course of business, unless the court for cause shown shortens the time and directs another method of giving notice.  See Fed.R.Bankr.Proc. 2002(a)(2).  However, with respect to a sale procedures motion, the Local Bankruptcy Rules provide that a hearing may be scheduled on not less than 7 days' notice to the applicable parties.  LBR 6004-1(b).  Beyond these notice and hearing requirements, Debtor and the Court are required to ensure that a maximum value is obtained for the assets sold.

"The court's obligation in § 363 sales is to assure that optimal value is realized by the estate under the circumstances. The requirement of notice and a hearing operates to provide both

1  a means of objecting and a method of attracting interest by potential purchasers." *In re*

2  *Persistence Capital, LLC*, 2007 Bankr. LEXIS 4906 (BAP 9th Cir. 2007) (quoting *In re*

3  *Lahijani*, 325 B.R. 282, 288-89 (BAP 9th Cir. 2005)).  To this end, courts have long recognized

4  the benefits of competitive bidding at hearings on private sales.  "Competitive bidding yields

5  higher offers and thus benefits the estate.  Therefore, the objective is 'to maximize bidding, not

6  restrict it.'"  *See In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga.

7  1988).

8         Here, the Bid Procedures are intended to ensure that the highest price will be obtained for

9  the Property.  The Bid Procedures will also make the sale process more efficient as it will

10  eliminate from consideration potential bidders who do not have the financial wherewithal to

11  consummate a transaction.  Most importantly, the Bid Procedures will afford the broadest notice

12  of the proposed sale as possible under the circumstances and ensure that the highest possible

13  price is obtained for the Property.

14         As discussed above, the Bid Procedures include a Good Faith Deposit, a Minimum Bid

15  Amount, and minimum Subsequent Overbids.  Debtor believes that these provisions are

16  necessary to ensure that only serious, financially qualified potential bidders participate in the

17  bidding process.  They are small enough to encourage bidding, yet large enough to ensure that

18  the Auction will be conducted in an efficient manner.

19         Debtor believes that the Bid Procedures are reasonable and appropriate, and should

20  obtain the maximum value for the Property to the benefit of the estate.

21  **IV.    CONCLUSION**

22         WHEREFORE, Debtor respectfully requests the Court enter an order approving the Sale

23  Procedures and affording any further relief deemed necessary and just.

24  DATED:  November 15, 2017                    Respectfully submitted by:

25                                                              **GOE & FORSYTHE, LLP**

26                                                              By: */s/Marc C. Forsythe*

27                                                                    Marc C. Forsythe, Counsel to 779 Stradella,
                                                                     LLC, Debtor and Debtor in Possession

28

### DECLARATION OF JEFFREY YOHAI

I, Jeffrey Yohai, declare and state as follows:

1.      I am the sole managing member of Baylor Holding, LLC, who is also the managing member of (a) 2401 Nottingham, LLC, a Debtor and Debtor in Possession in Case No. 8:16-bk-15243-CB ("2401 Nottingham Debtor"); (b) 1550 Blue Jay Way, LLC, a Debtor and Debtor in Possession in Case No. 8:16-BK-15171-CB ("1550 Blue Jay Debtor"); (c) 779 Stradella, LLC Nottingham, LLC, a Debtor and Debtor in Possession in Case No. 8:16-BK-15156-CB ("779 Stradella Debtor"); and (d) of Mt Yohai, LLC, a Debtor and Debtor in Case No. 8:16-BK-15157-CB ("Mt. Yohai Debtor").  The matters stated hereinafter are within my personal knowledge, and if called upon as a witness, I could and would competently testify thereto.  This declaration is submitted in support of  the *Motion for Order Establishing Sale Procedures for Real Property*.

2.      I have reviewed the Sale Procedures Motion and the information therein is true and correct.

3.      By this Sale Procedures Motion, Debtor seeks approval of the proposed sale procedures, which are attached hereto as **Exhibit "1"**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:   November 15, 2017                    _____

                                                                        Jeffrey Yohai

# EXHIBIT 1

# EXHIBIT 1

## PURCHASE AND SALE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS

THIS PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("Agreement") is entered into as of the _____ day of _____, 2017 (the "Effective Date"), by and between 779 Stradella, LLC, a California limited liability company ("Seller"), debtor-in-possession in U.S. Bankruptcy Court Case No. 8:16-bk-15156-CB ("Bankruptcy Case") and _____ or its assignee ("Buyer").

## RECITALS

A.      Seller is the owner of that certain real property with improvements consisting of a 15,000 square foot home on a 1.26 acre lot located at 779 Stradella Road, Los Angeles, California, and more particularly described on Exhibit "A" attached hereto and incorporated herein by this reference (the "Real Property").

B.      Buyer desires to purchase from Seller and Seller desires to sell to Buyer the Real Property, Personal Property, Intangible Property and Contracts (as defined herein), and collectively referred to as the "Property").

NOW, THEREFORE, for the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows.

## SECTION 1
## Certain Definitions

In addition to other terms defined elsewhere in this Agreement, the following terms will be defined as follows.

1.1.    "SALE APPROVAL DATE."

The proposed hearing date for approval of the private sale of the Real Property by the bankruptcy court is December 13, 2017 (the "Auction").

1.2.    "CLOSING" OR "CLOSING DATE."

The proposed closing date for the transaction contemplated by this Agreement in the event Buyer is the successful bidder at the Auction is January 5, 2018.

1.3.    "DUE DILIGENCE PERIOD."

The period of time within which Buyer shall conduct its inspections of the Property prior to the Auction.

1.4.    "ESCROW HOLDER."

First American Title Company.

1.5.    "GENESIS."

Genesis Capital Master Fund II, LLC, a Delaware limited liability company, a California finance lender.

1.6.    "PURCHASE PRICE."

$_____.

## SECTION 2
### Purchase and Sale

Upon and subject to the terms and conditions set forth in this Agreement, Seller agrees to sell to Buyer and Buyer agrees to buy from Seller: (a) the Real Property, together with all improvements, easements, water rights, if any, hereditaments and appurtenances thereto; (b) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property upon, attached or appurtenant to or used in connection with, the ownership, operation and maintenance of the Real Property ("Personal Property"); (c) all of Seller's right, title and interest, if any, in and to all intangible property relating to the Real Property or the Personal Property in the possession or control of Seller, including, without limitation, all trademarks, trade names, licenses, permits, approvals, authorizations, and other entitlements, all guaranties and warranties related to the Real Property and/or the Personal Property, and all studies, books, records, reports, test results, environmental assessments, and other documents and materials related to the Real Property (the "Intangible Property"); and (d) all other agreements and all other assignable permits regarding the Property, including, without limitation, all plans, maps, permits, drawings, architectural rendering, designs and floor plans, elevations, budgets, proformas, and entitlements (the "Contracts"); including without limitation tentative maps, final maps, building permits, utility extension or construction agreements, utility refund agreements, potable water and reclaimed water will-serve commitments and agreements regarding the dedication of water rights and other water-related matters, if any, water discharge permits, special use permits, development agreements, PUD agreements, and HOA agreements.

## SECTION 3
### Purchase Price; Payments

The Purchase Price for the Property shall be paid as follows:

3.1.    PAYMENT OF PURCHASE PRICE.

Within one (1) business day of the Closing Date, Buyer shall deliver to the Escrow Holder the Purchase Price, plus any other sums necessary to close, in the form of confirmed wire transfer of funds or other immediately available funds.

3.2.    DEBT SERVICE PAYMENTS.

Within three (3) business days of entry of the Order Approving the Sale of the Real Property to Buyer herein in the Bankruptcy Case, Buyer shall pay to Genesis an amount equal to 12% interest per annum on its outstanding pre-petition claim each month until Closing (each, an "Interest Payment").

## SECTION 4
### Representations and Warranties

4.1.    SELLER'S REPRESENTATIONS.

Seller represents and warrants to Buyer as of the Effective Date and as of the date of Closing as follows.

(a)    Seller is a duly formed and validly existing limited liability company and in good standing pursuant to the laws of the State of California and has the full power, authority and legal right to execute and deliver and perform under this Agreement.

(b)    The execution and delivery of this Agreement, the consummation of the transactions provided for herein and the fulfillment of the terms hereof on the part of Seller will not result in a breach of any instrument to which Seller is a party or by which Seller is bound or of any judgment, decree or order of any court or governmental body or any law, rule or regulation applicable to Seller.

(c)    The execution, delivery and performance of this Agreement by the persons executing the same on behalf of Seller have been duly and validly authorized (and by their execution hereof such persons individually represent and warrant that they are so authorized) and this Agreement and the other agreements and instruments contemplated hereby constitute legal, valid and binding obligations of Seller, enforceable in accordance with their respective terms.

(d)    Except for the approval of the Bankruptcy Court in the Bankruptcy Case, no consent, approval or authorization of any governmental authority or private party is required in connection with the execution, delivery and performance of this Agreement by Seller.

4.2.    BUYER'S REPRESENTATIONS.

Buyer represents and warrants to Seller as of the Effective Date and as of the date of Closing as follows.

(a)    Buyer is a duly formed and validly existing limited liability company in good standing pursuant to the laws of the State of Delaware and has the full power, authority and legal right to execute and deliver and perform under this Agreement.

(b)    The execution and delivery of this Agreement, the consummation of the transactions provided for herein and the fulfillment of the terms hereof on the part of Buyer will not result in a breach of any instrument to which Buyer is a party or by which Buyer is bound or of any judgment, decree or order of any court or governmental body or any law, rule or regulation applicable to Buyer.

(c)    The execution, delivery and performance of this Agreement by the persons executing the same on behalf of Buyer have been duly and validly authorized (and by their execution hereof such persons individually represent and warrant that they are so authorized) and this Agreement and the other agreements and instruments contemplated hereby constitute legal, valid and binding obligations of Buyer, enforceable in accordance with their respective terms.

(d)    Except for the approval of the Bankruptcy Court in the Bankruptcy Case, no consent, approval or authorization of any governmental authority or private party is required in connection with the execution, delivery and performance of this Agreement by Buyer.

EXHIBIT "1"

4.3.    RELIANCE.

The representations and warranties contained herein are made with the knowledge and expectation that Buyer and Seller, as the case may be, are placing complete reliance thereon.

4.4.    SURVIVAL.

The representations and warranties contained herein shall survive the Closing, provided, however, that all such representations and warranties shall expire one (1) year after the Closing except with respect to violations alleged in writing within such period.

## SECTION 5
### Deliveries to Escrow Holder

5.1.    BY SELLER.

On or prior to the Closing Date, Seller shall deliver or cause to be delivered to Escrow Holder the following items:

(a)    A Grant, Bargain, Sale Deed ("Deed"), substantially in the form attached to this Agreement as Exhibit "B" and incorporated herein, duly executed and acknowledged by Seller and in recordable form, conveying the Property to Buyer.

(b)    A State of California Declaration of Documentary Transfer Tax showing the real property transfer tax due, duly executed by Seller.

(c)    A Transferor's Certificate of Non-Foreign Status, duly executed by Seller.

(d)    An Assignment and Bill of Sale conveying title to the Personal Property, the Intangible Property and the Contracts to Buyer, duly executed by Seller.

(e)    Any other documents required by this Agreement to be delivered by Seller to Escrow Holder.

(f)    Possession of the Property.

5.2.    BY BUYER.

On or prior to the Closing Date, Buyer will deliver or cause to be delivered to Escrow Holder the following items:

(a)    The Purchase Price plus any other sums necessary to close, in the form of wire transfer or other immediately available funds.

(b)    A State of California Declaration of Documentary Transfer Tax showing the real property transfer tax due, duly executed by Buyer.

(c)    Any other documents required by this Agreement to be delivered by Buyer to Escrow Holder.

EXHIBIT "1"

(d)      Evidence reasonably acceptable to Seller that the documents delivered by Buyer to Seller at Closing have been duly authorized by Buyer, duly executed on behalf of Buyer, and when delivered constitute valid and binding obligations of Buyer.

5.3.      BY BUYER AND SELLER.

Buyer and Seller will each deposit such other instruments as are reasonably required by Escrow Holder or otherwise required to close Escrow.  Seller and Buyer hereby designate the Escrow Holder as the "Reporting Person" for the transaction pursuant to Section 6045(e) of the Internal Revenue Code.

### SECTION 6
### Conditions to the Close Of Escrow

6.1.      CONDITIONS PRECEDENT TO BUYER'S OBLIGATIONS.

The following conditions must be satisfied not later than the Closing Date or such other period of time as may be specified below and, as such, are conditions precedent to Buyer's obligations under Section 6.2:

(a)      The Motion to Approve the Sale of the Real Property scheduled for December 13, 2017, shall have been granted by the bankruptcy court in the Bankruptcy Case.

(b)      Seller will have duly performed each and every agreement to be performed by Seller hereunder in all material respects and Seller's representations, warranties and covenants set forth in this Agreement will be true and correct as of the Closing Date in all material respects.

(c)      Seller will have delivered the items described in Section 5.1.

(d)      As of the Closing, Escrow Holder will issue, or will have irrevocably committed to issue, the Title Policy to Buyer.

(e)      The Bankruptcy Case shall be dismissed or the Real Property shall be excluded from the Bankruptcy Case.

(f)      No material change to the Real Property shall have occurred after the date of this Agreement and prior to the Close of Escrow without the prior written consent of Buyer.

The conditions set forth in this Section 5.1 are solely for the benefit of Buyer and may be waived only by Buyer.  At all times Buyer has the right to waive any such condition.  Such waiver or waivers must be in writing to Seller.

6.2.      CONDITIONS PRECEDENT TO SELLER'S OBLIGATIONS.

The following conditions must be satisfied not later than the Closing Date or such other period of time as may be specified below and, as such, are conditions precedent to Seller's obligations under Section 6.1:

(a)      The Motion to Approve the Sale of the Real Property scheduled for December 13, 2017, shall have been granted by the bankruptcy court in the Bankruptcy Case.

(b)      Buyer will have duly performed each and every agreement to be performed by Buyer hereunder in all material respects and Buyer's representations, warranties and covenants set forth in this

EXHIBIT "1"

Agreement will be true and correct as of the Closing Date in all material respects.

        (b)        Buyer shall have delivered to Escrow Holder the items described in Section 5.2.

The conditions set forth in this Section 5.2 are solely for the benefit of Seller and may be waived only by Seller.  At all times Seller has the right to waive any such condition.  Such waiver or waivers must be in writing to Buyer.

**SECTION 7**
Due Diligence Period

7.1.    INVESTIGATIONS.

Buyer shall have the right, at any time up to and including the day of the Auction (the "Due Diligence Period"), if Buyer chooses to do so, investigate any matters related to the Property in Buyer's discretion. Seller agrees to provide Buyer with copies of all documents, plans and permits, including any environmental inspections, provided that such documents are in Seller's actual possession or control.  If Buyer desires to terminate this Agreement, then Buyer shall deliver to Seller a written notice terminating this Agreement (the "Termination Letter"), which must be received by Seller by not later than at the commencement of the Auction. If Seller timely receives the Termination Letter, then this Agreement shall terminate, in which case neither party shall have any further rights or obligations hereunder except as otherwise set forth herein. Failure to deliver the Termination Letter by such time shall result in Buyer being obligated to proceed with the Closing on its purchase of the Property and comply with all obligations of Buyer under this Agreement.

7.2.    ACCESS.

Buyer, Buyer's employees and representatives, will be afforded reasonable access to the Property upon reasonable notice to Seller for the purposes of conducting an investigation of the Property.  Buyer covenants and agrees to indemnify and hold Seller harmless from all losses, damages, liabilities, actions, suits, proceedings, claims, demands, assessments, judgments, costs, and expenses, including reasonable attorneys' fees, arising from Buyer's entry upon the Property.  This Section 7.2 shall survive the Closing or sooner termination of this Agreement.

**SECTION 8**
Property "As-Is/Where-Is"

8.1.    AS-IS/WHERE-IS PURCHASE.

Buyer agrees that the Property is to be sold to and accepted by Buyer at the Closing in its then condition and in its then location, "AS-IS/WHERE-IS," and with all faults, if any.  No person acting on behalf of Seller is authorized to make, and by execution hereof, Buyer acknowledges that no person has made, any representation, agreement, statement, warranty, guarantee, or promise regarding the Property or the transaction contemplated herein or the zoning, construction, physical condition, or other status of the Property except as may be expressly set forth in this Agreement.  Seller shall have no liability to Buyer for the accuracy or completeness of any information provided to Buyer by Seller relating to the Property.

8.2.    NO REPRESENTATIONS OR WARRANTIES.

Except as expressly stated herein, Seller makes no representation or warranty, express or implied, with respect to the Property.  No representation, warranty, agreement, statement, guaranty, or promise, if any, made by any person acting on behalf of Seller which is not contained in this Agreement will be valid or binding on Seller.

Page 6
EXHIBIT "1"

## SECTION 9
## Title

10.1    Title Report. Escrow Holder shall coordinate with Title and deliver to Buyer a preliminary title report or commitment (the "Title Report") and a copy of all recorded documents for which exception shall be taken and shall use its best efforts to deliver such Title Report within five (5) days following the opening of Escrow.

10.2    Approval of Exceptions. Buyer shall have the right to object to any fact, condition, requirement or exception set forth in the Title Report other than as might be disclosed by a current land title survey of the property, upon written notice (a "Notice of Objection") given to Seller no later than Fifteen (15) days prior to expiration of the Due Diligence Period. Subject to the remaining provisions of this Section 10.2, Buyer shall be deemed to have accepted any fact, condition, requirement or exception reflected in the Title Report for which no Notice of Objection shall have been timely given. Seller shall have the right, in its sole and absolute discretion and upon written notice to Buyer given no later than Ten (10) days from and after the date any Notice of Objection shall have been received by Seller (a "Title Reply Period"), within to agree to cure any title objection properly noticed by Buyer. Seller shall be deemed to have refused to satisfy or cure, as the case may be, any and each fact, condition, requirement and/or exception so noticed by Buyer for which no such notice of cure (a "Notice of Cure") shall have been given

10.3    Termination of Agreement. If Seller shall not give Notice of Cure with respect to each fact, condition, requirement or exception which is the subject of any property Notice of Objection, Buyer thereupon shall have the right in the sole and absolute discretion of Buyer and as Buyer's sole remedies hereunder to elect either (i) to terminate this Agreement as described in Section 7.1 or (ii) to accept title to the Property in such condition as Seller can convey and proceed to close of Escrow hereunder without any claim against Seller on account of the existence of such fact, condition, requirement or exception.

10.4    Title Insurance. At the Closing, Escrow Holder will issue to Buyer a standard CLTA policy of title insurance, or, if requested by Buyer, an ALTA policy of title insurance (provided that Buyer has satisfied all requirements to obtain an ALTA policy, including, without limitation, the preparation of an ALTA survey), in an amount equal to the Purchase Price showing: (a) fee title to the Real Property vested in Buyer; (b) taxes paid current; and (c) no monetary encumbrances or liens, other than covenants, conditions, restrictions, reservations, rights, rights-of-way, easements, and liens for taxes and further containing a standard mechanic's lien endorsement ("Title Policy"). Seller shall not be required to incur any liability or to provide any indemnities whatsoever respecting the extended ALTA coverage or any endorsements requested by Buyer. Escrow Holder, by closing the Escrow, shall be deemed to have irrevocably committed to issue the Title Policy.

## SECTION 10
## Costs and Expenses

10.1.    BUYER.

Buyer will pay (a) all premiums for the Title Policy and the cost of all endorsements; (b) any document recording charges; (c) all escrow fees and costs; (d) all real property transfer taxes; and (e) real property taxes.

10.2.    OTHER COSTS AND EXPENSES.

Except as otherwise provided in Section 15 and 17.6, Buyer and Seller will each pay all of their own legal and professional fees and fees of other consultants incurred by Buyer and Seller.

## SECTION 11
### Prorations

11.1.   TAXES.

All non-delinquent real estate taxes on the Property will be prorated as of the Closing based on the actual current tax bill. If the Closing takes place before the real estate taxes are fixed for the tax year in which the Closing occurs, the apportionment of real estate taxes will be made on the basis of the real estate taxes for the immediately preceding tax year applied to the latest assessed valuation. All delinquent taxes, if any, on the Property will be paid at the Closing from funds accruing to Seller. All supplemental taxes billed after the Closing for periods prior to the Closing will be paid promptly by Seller.

11.2.   UTILITIES.

Water, electricity, gas, and other utility payments or charges shall not be adjusted through Escrow if readings can be made at Closing by the utility companies. Buyer agrees to open accounts with the respective utilities and to cooperate with Seller in requesting readings as of Closing. In the event that appropriate readings cannot be obtained as of Closing, then adjustments shall be made by Buyer and Seller through Escrow on the basis of estimates from the latest bills available.

11.3.   GENERAL PRORATION PROVISIONS.

Such other items that are customarily prorated in transactions of this nature shall be ratably prorated between Buyer and Seller. Bills received after the Closing Date which relate to expenses incurred, services performed or other amounts allocable to any period prior to the Closing Date shall be paid by Seller unless Buyer shall have received a credit therefor at Closing. All prorations and Closing adjustments shall be made on the basis of a three hundred sixty-five (365) day calendar year.

11.4.   INDEMNIFICATION.

Buyer shall assume and pay all debts, charges, claims, damages, and liabilities attributable to the ownership and operation of the Property which arise after the close of Escrow and shall hold Seller harmless therefrom and indemnify and defend against the same, except liabilities expressly assumed in writing by Seller. Seller shall pay and hold Buyer harmless from all debts, charges, claims, damages, and liabilities attributable to the Seller's ownership and operation of the Property which arise before the close of Escrow and shall hold Buyer harmless therefrom and indemnify and defend against the same, except liabilities expressly assumed in writing by Buyer.

## SECTION 12
### Contracts

Seller shall not enter into any new maintenance, repair, management, equipment leasing, supply, employment, laundry, telephone, or cable service, utility or other contracts relating to the Property, or extend, renew or replace any existing contracts relating to the Property, without the prior written consent of Buyer, which shall not be unreasonably withheld, conditioned or delayed.

EXHIBIT "1"

## SECTION 13
Remedies

13.1.    DEFAULT BY SELLER.

In the event the Closing and the consummation of the transactions contemplated by this Agreement do not occur by reason of any default (which includes any material breach of the provisions of this Agreement) by Seller, Buyer will be entitled to pursue any or all of the following remedies: (a) pursue an action for specific performance; or (b) pursue any other remedy available to Buyer at law or in equity.

13.2.    DEFAULT BY BUYER.

IF THE CLOSING DOES NOT OCCUR BY REASON OF ANY DEFAULT BY BUYER, BUYER AND SELLER AGREE THAT IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES SUFFERED BY SELLER AS A RESULT OF BUYER'S FAILURE TO COMPLETE THE PURCHASE OF THE PROPERTY PURSUANT TO THIS AGREEMENT, AND THAT UNDER THE CIRCUMSTANCES EXISTING AS OF THE DATE OF THIS AGREEMENT, THE LIQUIDATED DAMAGES PROVIDED FOR IN THIS SUBSECTION REPRESENT A REASONABLE ESTIMATE OF THE DAMAGES WHICH SELLER WILL INCUR AS A RESULT OF SUCH FAILURE; PROVIDED, HOWEVER, THAT THIS PROVISION WILL WAIVE OR AFFECT BUYER'S INDEMNITY OBLIGATIONS AND SELLER'S RIGHTS TO THOSE INDEMNITY OBLIGATIONS UNDER THIS AGREEMENT.  THEREFORE, BUYER AND SELLER DO HEREBY AGREE THAT A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER IN THE EVENT THAT BUYER DEFAULTS OR FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY IS AN AMOUNT EQUAL TO TEN THOUSAND DOLLARS ($10,000.00).  THIS AMOUNT WILL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR THE BREACH OF THIS AGREEMENT BY BUYER.  THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR A PENALTY AGAINST BREACH, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER.  UPON DEFAULT BY BUYER, THIS AGREEMENT WILL BE TERMINATED AND, EXCEPT FOR BUYER'S INDEMNITY OBLIGATIONS WHICH MAY BE ENFORCED BY SELLER, NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS HEREUNDER, EACH TO THE OTHER EXCEPT FOR THE RIGHT OF SELLER TO COLLECT SUCH LIQUIDATED DAMAGES FROM BUYER AND ESCROW HOLDER.

_____                                            _____
Seller's Initials                                                                Buyer's Initials

## SECTION 14
Brokers

Seller represents and warrants to Buyer, and Buyer represents and warrants to Seller, that no broker or finder has been engaged by either of them in connection with any of the transactions contemplated by this Agreement.  Buyer and Seller will indemnify, save harmless and defend the other from any liability, cost or expense arising out of or connected with any claim for any other commission or compensation made by any person or entity claiming to have been retained or contacted by them in connection with this transaction.

## SECTION 15
Risk of Loss; Condemnation

EXHIBIT "1"

In the event that, after the date hereof but prior to the Closing, either: (a) all or any portion of the Property is taken pursuant to or in lieu of and under threat of eminent domain proceedings; or (b) the occurrence of any "material damage or destruction" to any of the Property by any casualty, Seller shall promptly notify Buyer in writing thereof. Buyer may elect to terminate this Agreement by providing written notice to Seller within ten (10) days following receipt of written notice thereof from Seller, whereupon neither party shall have any further rights or obligations under this Agreement except as to those provisions of this Agreement which provide that the same shall survive the termination hereof. If Buyer does not elect to terminate this Agreement, Buyer shall be deemed to have elected to complete the transactions contemplated hereunder. Seller shall have no obligation to repair or replace any damage or destruction, and Seller shall, at the Closing, assign to Buyer all claims of Seller respecting any condemnation or casualty insurance coverage, as applicable, and all proceeds thereof received by Seller prior to the Closing (other than proceeds applicable to damage which shall have been repaired by Seller prior to the Closing and rent loss proceeds for the period prior to Closing). For purposes of this Section 15, "material damage or destruction" shall mean any damage or destruction where the estimated cost of repair of the same is in excess of One Hundred Thousand Dollars ($100,000.00).

## SECTION 16

16.1.    NOTICE

Any and all notices and demands by either party hereto to the other party, required or desired to be given hereunder shall be in writing and shall be validly given only if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested, or if made by Federal Express or other delivery service which keeps records of deliveries and attempted deliveries, or if made by facsimile machine (receipt of which is acknowledged or if a copy thereof is delivered the following day by a delivery service

To Seller:          Mt Yohai LLC
                    c/o Goe & Forsythe, LLP
                    Attn: Marc C. Forsythe, LLP
                    18101 Von Karman, Suite 1200
                    Irvine, California 92612
                    Facsimile:  (949) 955-9437


                    With a copy to:
                    Goe & Forsythe, LLP
                    Attn: Marc C. Forsythe, LLP
                    18101 Von Karman, Suite 1200
                    Irvine, California 92612
                    Facsimile:  (949) 955-9437


To Buyer:



To Escrow Holder:

EXHIBIT "1"

16.2.   CHANGES.

A party hereto may change its address for the purpose of receiving notices or demands as herein provided by a written notice given in the manner aforesaid to the other party hereto, which notice of change of address shall not become effective, however, until the actual receipt thereof by the other party.

## SECTION 17
### Miscellaneous Provisions

17.1.   CALIFORNIA LAW FORUM.

The laws of the State of California shall govern the validity, construction, performance, and effect of this Agreement.  Any action relating to this agreement may be commenced and maintained only in a court having competent jurisdiction that is located in Orange County, California.

17.2.   SUCCESSORS.

This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

17.3.   ASSIGNMENT.

Buyer may assign this Agreement one time to an entity that controls, is controlled by or is under common control with Buyer or any of Buyer's members with written notice to Seller and Escrow Holder but without Seller's consent.  Any other assignment by Buyer shall require Seller's prior written consent, which consent shall not be unreasonably withheld.

17.4.   NON-WAIVER.

The failure to enforce or the delay in enforcement of any provision of this Agreement by a party hereto or the failure of a party to exercise any right hereunder shall in no way be construed to be a waiver of such provision or right (or of any other provision or right hereof whether of a similar or dissimilar nature) unless such party expressly waives such provision or right in writing.

17.5.   PARTIAL INVALIDITY.

If any term, provision, covenant, or condition of this Agreement, or any application thereof, should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants and conditions of this Agreement, and all applications thereof, not held invalid, void or unenforceable, shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

17.6.   ATTORNEYS' FEES.

In the event any action is commenced by either party against the other in connection herewith (including any action to lift a stay or other bankruptcy proceeding), the prevailing party shall be entitled to payment from the other party or parties of the prevailing party's costs and expenses, including reasonable attorneys' fees, as determined by the court.

17.7.   ENTIRE AGREEMENT.

This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained herein and supersedes all prior representations, agreements and understandings of the parties,

including any "letter of intent," "letter of understanding," or similar documents. No addition to or modification of this Agreement shall be binding unless executed in writing by the parties hereto.

17.8.    TIME OF ESSENCE.

Time is of the essence in the performance of the parties' respective obligations set forth in this Agreement and all the terms, provisions, covenants, and conditions hereof.

17.9.    RECORDATION OF AGREEMENT.

Each party covenants and agrees that it will not cause this Agreement or a memorandum thereof to become of record in any public office. In the event either party violates this provision, the other party may, at its election and in addition to any other remedies it may have, terminate this Agreement and the violating party shall pay the costs of cancellation of the Escrow Holder.

17.10.    COUNTERPARTS.

This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall constitute one and the same Agreement. Any signature page of this Agreement may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart, identical in form thereto, but having attached to it one or more additional signature pages. To facilitate execution of this Agreement, the parties may execute and exchange by telephone facsimile counterparts of the signature pages.

17.11.    HEADINGS.

The headings of the various paragraphs of this Agreement have been inserted only for convenience, and shall not be deemed in any manner to modify or limit any of the provisions of this Agreement, or be used in any manner in the interpretation of this Agreement.

17.12.    INTERPRETATION.

Whenever the context so requires, all words used in the singular shall be construed to have been used in the plural (and vice versa), each gender shall be construed to include any other genders, and the word "person" shall be construed to include a natural person, a corporation, a firm, a partnership, a joint venture, a trust, an estate, or any other entity.

17.13.    DATES.

The term "business day" shall mean calendar days other than a Saturday, Sunday or national or State of Nevada holiday. If any dates hereunder for the taking of some action or the expiration of some time period fall on a day that is not a business day, such date shall be the next following business day.

17.14.    SUBMISSION.

The submission of this Agreement for examination and/or execution hereof does not constitute a reservation of or option for the Property and this Agreement becomes effective only upon execution and delivery thereof by Buyer and Seller.

17.15.   JURY TRIAL WAIVER.

THE PARTIES KNOWINGLY AND FREELY WAIVE ANY RIGHT THEY MAY HAVE TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT.  THE PARTIES ACKNOWLEDGE AND REPRESENT THAT THE RIGHT TO A JURY TRIAL IS AN IMPORTANT RIGHT, THAT EACH HAS REVIEWED THIS WAIVER WITH LEGAL COUNSEL OF ITS OWN CHOOSING, OR HAS HAD AN OPPORTUNITY TO DO SO, THAT THIS PROVISION IS A MATERIAL AND NEGOTIATED TERM OF THIS AGREEMENT, THAT EACH PARTY WOULD NOT ENTER INTO THIS AGREEMENT BUT FOR THE JURY TRIAL WAIVER, AND THAT EACH PROVIDES THIS WAIVER HAVING HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF ITS CHOOSING.

_____                                                  _____
Buyer's Initials                                                          Seller's Initials

17.16.   NO INFERENCE.

The parties agree that all parties participated in the negotiation and drafting of this Agreement and that this Agreement shall not be construed against any party as a result of such party's role in the drafting of this Agreement.

17.17.   FURTHER ASSURANCES.

In addition to the obligations required to be performed hereunder by Seller and Buyer at or prior to Closing, each Party, from and after Closing, shall execute, acknowledge and/or deliver such other instruments as may be reasonably requested in order to effectuate the purposes of this agreement, provided said action does not impose additional liability or obligations on Seller or Buyer beyond that imposed by this agreement or the documents delivered at closing.

EXHIBIT "1"

IN WITNESS WHEREOF, Buyer and Seller have executed this Agreement as of the day and year first above written.

Seller:                                              Buyer:

779 Stradella LLC, a California limited
liability company, debtor-in-possession              in U.S. Bankruptcy Court
Case No. 8:16-bk-15156-CB

By:    Baylor Holding, LLC                           By:    _____
Its:    Manager                                      Name:  _____
                                                     Title:  _____

       By:    _____
       Name:  Jeffrey Yohai
       Title:  Managing Member


[SIGNATURES CONTINUE ON FOLLOWING PAGE]

EXHIBIT "1"

## JOINDER BY ESCROW HOLDER

First American Title Company joins this Agreement for the purposes of agreeing to act as Escrow Holder under this Agreement and to confirm that the Opening of Escrow occurred on _____, 2017.

First American Title Company

By:      _____
Name:  _____
Title:    _____

Opening of Escrow:      _____, 2017.


Escrow Number:      _____

EXHIBIT "A"
TO PURCHASE AGREEMENT

DESCRIPTION OF PROPERTY

EXHIBIT "B"
TO PURCHASE AGREEMENT

DEED

APN NO.:

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:




MAIL TAX STATEMENTS TO:



_____

(Space above line for Recorder's use)


GRANT BARGAIN AND SALE DEED


      779 Stradella, LLC, a California limited liability company, "Grantor," does hereby Grant, Bargain, Sell, and Convey to _____, "Grantee," the real property in the County of Los Angeles, State of California (the "Land") described on Exhibit "A" attached hereto and incorporated herein by this reference, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or otherwise appertaining, including water rights of all kinds.


SUBJECT TO:

      1.     Unpaid general taxes for the current fiscal tax year; and

      2.     All covenants, conditions, restrictions, reservations, rights, rights-of-way, and easements recorded against the Land prior to or concurrently with this Deed, and all other matters of record or apparent upon inspection of the Land.

779 Stradella, LLC, a California limited
liability company, debtor-in-possession
in U.S. Bankruptcy Court
Case No. 8:16-bk-15157-CB

By:    Baylor Holding, LLC
Its:    Manager

      By:  _____
      Name:  Jeffrey Yohai
      Title:  Managing Member

ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF                    )

On _____ before me, _____
(insert name and title of the officer) personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 18101 Von Karman Avenue, Suite 1200, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER ESTABLISHING SALE PROCEDURES FOR REAL PROPERTY;MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JEFFREY YOHAI IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 15, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) November 15, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 15, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Catherine Bauer, USBC, 411 West Fourth Street, Santa Ana, CA 92701

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 15, 2017 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

14

1

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

2

- **Jeffrey W Dulberg**    jdulberg@pszjlaw.com
- **Marc C Forsythe**    kmurphy@goeforlaw.com,

3

   mforsythe@goeforlaw.com;goeforecf@gmail.com
- **Richard Girgado**    rgirgado@counsel.lacounty.gov

4

- **Michael J Hauser**    michael.hauser@usdoj.gov
- **James Andrew Hinds**    jhinds@jhindslaw.com, mduran@jhindslaw.com

5

- **Marc Y Lazo**    mlazo@whbllp.com

6

- **Kambiz J Shabani**    joseph@shabanipartners.com, kevin@shabanipartners.com
- **Paul R Shankman**    pshankman@jhindslaw.com, mduran@jhindslaw.com

7

- **Rachel M Sposato**    rsposato@jhindslaw.com, mduran@jhindslaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

**In re 779 Stradella, LLC**
**USBC Case #8:16-bk-15156-CB**

**Debtor**
779 Stradella, LLC
3991 MacArthur Blvd., Ste.125
Newport Beach, CA 92660-3049

**United States Trustee**
United States Trustee
411 West Fourth Street, #7160
Santa Ana, CA 92701-4500

**CREDITORS**

California TD Specialists
8190 East Kaiser Blvd
Anaheim, CA 92808-2215

Crest Real Estate, LLC
11150 W. Olympic Blvd., Suite 700
Los Angeles, CA 90064-1825

Feffer Geological Consulting
1990 S Bundy Dr., # 400
Los Angeles, CA 90025-5245

Genesis Capital Master Fund II, LLC
Attn Lending Department
21650 Oxnard Street, Suite 1700
Woodland Hills, CA 91367-5058

Parker Resnick
1927 Pontius Avenue
Los Angeles, CA 90025-5611

Paul Manafort
721 Fifth Avenue #43G
New York, NY 10002-2537

Steve Opdahl Surveying
206 Dryden St
Thousand Oaks, CA 91360-5303

The Tree Resource
PO Box 49314
Los Angeles, CA 90049-0314

Vantage Design Group
~~2634 S La Cienega Blvd~~
~~Los Angeles, CA 90034~~
RTS Unable to Fwd 01-26-17

Richard M. Pachulski, Esq.
Jeffrey W. Dulberg, Esq.
PACHULSKI STANG et al
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003

Baylor Holding, LLC
779 Stradella Road
Los Angeles, CA 90077-3307

Jeffrey Yohai
30254 Morning View Drive
Malibu, CA 90265-3617

Los Angeles County Tax Collector
PO Box 54018
Los Angeles, CA 90054-0018

LA County Treasurer & Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

**Request to be added**
Stephen D. Blevit, Esq.
Sidley Austin, LLP
1999 Avenue of the Stars, 17th Fl.
Los Angeles, CA 90067

**Request to be added**
Sophia Daneshgar
1021 Cove Way
Beverly Hills, CA 90210